UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In Re:

David Baard Hastings
fka David Baard Liset

Debtor

Chapter 7, Case No. 15-50779

---

**DECLARATION IN SUPPORT OF
MOTION FOR RELIEF FROM STAY**

---

I, Kevin T. Dobie, declare:

1. I am an attorney at the law firm of Usset, Weingarden & Liebo, P.L.L.P. and hereby make this Affidavit in such capacity.

2. I have reviewed the real property records relating to the property located at 730 Sherburne Ave, Saint Paul, MN 55104 in Ramsey County, Minnesota, legally described as follows:

    Lot 13, Block 2, Syndicate No. 1 Addition.

3. There is a mortgage dated September 12, 2003 executed by the original mortgagor, David B. Liset, in the original principal amount of $133,500.00, recorded in the office of the Ramsey County Recorder on October 1, 2003, as Document No. 3681250. The mortgage was then assigned to LPP Mortgage, LTD. by assignment of mortgage dated September 10, 2008, and recorded in the office of the Ramsey County Recorder on May 10, 2011, as Document No. 4279178.  A true and correct copy of the mortgage is attached as <u>Exhibit A</u> and a true and correct copy of the assignment of mortgage is attached as <u>Exhibit B</u>.

4.  The debtor and a third party, Ying Xiong, entered into a Contract for Deed dated May 20, 2010, and recorded in the office of the Ramsey County Recorder on January 3, 2013, as Document No. 4377806.  A true and correct copy of the Contract for Deed is attached as Exhibit C.

5.  The property was foreclosed by sheriff's sale February 7, 2012. The Sheriff's Certificate of Sale in favor of LPP Mortgage Ltd. was recorded in the office of the Ramsey County Recorder on February 8, 2012, as Document No. 4319472, subject to a 12-month redemption period.  A true and correct copy of the recorded Sheriff's Certificate of Sale is attached as Exhibit D.

6.  On February 7, 2012, the date of the sheriff's sale, the debtor or his agent delivered the funds necessary to reinstate the loan to Usset, Weingarden & Liebo, PLLP, the law firm foreclosing the mortgage on behalf of LPP Mortgage Ltd.

7.  This bankruptcy petition was filed on November 25, 2015, after the expiration of the redemption period.

8.  This Declaration is given in support of the motion for relief from the automatic stay.


I swear under the penalty of perjury that the foregoing is true and correct.


Date: May 5, 2016                    By:_____/s/Kevin T. Dobie_____

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In Re:

David Baard Hastings                                  NOTICE OF MOTION FOR
fka David Baard Liset                                 RELIEF FROM AUTOMATIC
                                                      STAY

                    Debtor

Chapter 7, Case No. 15-50779

---

TO:   David Liset,  INCLUDING TRUSTEE AND OTHER INTERESTED PARTIES

    1.    LPP Mortgage LTD.  ("Movant") by its attorneys, moves the court for the relief requested below and gives notice of hearing.

    2.    The court will hold a hearing on this motion at 9:30 a.m. on May 23, 2016, in courtroom 2, 4th Floor, 515 W First Street, Duluth, MN  55802 or as soon thereafter as counsel can be heard.

    3.    Any response to this motion must be filed and delivered not later than on May 18, 2016, which is five days before the time set for the hearing (including Saturdays, Sundays, and holidays). UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.

    4.    This court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334, Federal Rule of Bankruptcy Procedure No. 5005.  This is a core proceeding.  The chapter 7 case was filed on November 25, 2015, and is now pending in this court.

    5.    This motion arises under 11 U.S.C. § 362 and Federal Rules of Bankruptcy Procedure 4001, and is filed under Federal Rules of Bankruptcy Procedure 9014 and Local Rules 9006-1, 9013-1 to 9013-3.

6.      The debtor was the owner of real property located at 730 Sherburne Ave, Saint

Paul, MN 55104, legally described as:

Lot 13, Block 2, Syndicate No. 1 Addition, Ramsey County, Minnesota.

7.      The indebtedness of David Liset was evidenced by a promissory note and

mortgage dated September 12, 2003, in the amount of $133,500.00. The mortgage was filed in

the Office of the Ramsey County Recorder on October 1, 2003, as Document no. 3681250.  The

mortgage was subsequently assigned to LPP Mortgage Ltd. (Dobie Decl. ¶ 3.)

8.      The debtor and a third party, Ying Xiong, entered into a Contract for Deed dated

May 20, 2010, and recorded in the office of the Ramsey County Recorder on January 3, 2013, as

Document No. 4377806. (Dobie Decl. ¶ 4.)

9.      Debtor failed to make payments under the Note and Mortgage, and LPP Mortgage

Ltd. scheduled a sheriff's sale on February 7, 2012.  On the date of the sheriff's sale, February 7,

2012, the debtor or his agent delivered the funds necessary to reinstate the loan. (Dobie Decl. ¶

6.)

10.      Due to inadvertence and mistake, the foreclosure sale was completed. LPP

Mortgage Ltd. was the successful bidder at the sale and the Sheriff's Certificate of Sale dated

February 7, 2012, was recorded in the Office of the County Recorder on February 8, 2012 as

Document no. 4319472.  (Dobie Decl. ¶ 5.)

11.       The parties agree that the sheriff's sale and the Sheriff's Certificate of Sale

should be declared null and void and the mortgage and assignment of mortgage should be

revived as if the sheriff's sale had not occurred.

12.      There are no parties that will be prejudiced by the relief requested herein.

13.    By reason of the foregoing, LPP Mortgage Ltd. is entitled to have the automatic stay lifted and vacated so it can complete the eviction action and pursue the Eviction Security.

14.    LPP Mortgage Ltd. also requests that any order granting its motion be effective immediately, notwithstanding Federal Rules of Bankruptcy Procedure 4001(a)(3).

WHEREFORE, LPP Mortgage Ltd. by its undersigned attorney, moves the Court for an Order that the automatic stay provided by 11 U.S.C. Section 362(a) be terminated to permit LPP Mortgage Ltd. to proceed with an eviction action, if necessary and for such other and further relief as may be just and equitable.

Dated:  May 6, 2016

USSET, WEINGARDEN & LIEBO, P.L.L.P.

By:/E/ Kevin T. Dobie
    Kevin T. Dobie #388322
    Attorney for Movant
    4500 Park Glen Road, #300
    Minneapolis, MN 55416
    (952) 925-6888
    (952) 925-5879 (facsimile)
    kevin@uwllaw.com

DOC# 3681250
Certified Recorded On
OCT. 01,2003 AT 12:00PM

OFFICE CO. RECORDER
RAMSEY COUNTY MN

Fee Amount:     $25.00

RAMSEY COUNTY

Receipt No:53664       Date: 9/29/2003
Registration tax hereon of     $320.40     Paid
MN Conservation Fund M.S. 473H  $5.00 Paid
Dorothy A. McClung, Auditor by Clschreiber

# MORTGAGE

After Recording Return To:
GREAT NORTHERN FINANCIAL GROUP, INC.
200 COON RAPIDS BOULEVARD, SUITE 210
COON RAPIDS,MINNESOTA 55433

**Walsh Title**

MIN:

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)  "Security Instrument" means this document, which is dated     SEPTEMBER  12        ,2003 , together with all Riders to this document.
(B)  "Borrower" is  / DAVID B LISET, A SINGLE MAN

Borrower is the mortgagor under this Security Instrument.
(C)  "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D)  "Lender" is  GREAT NORTHERN FINANCIAL GROUP, INC.

Lender is a  CORPORATION                                                                          organized
and existing under the laws of     MINNESOTA
Lender's address is 200 COON RAPIDS BOULEVARD, SUITE 210, COON RAPIDS,
MINNESOTA 55433
(E)  "Note" means the promissory note signed by Borrower and dated    SEPTEMBER  12    ,2003 .
The Note states that Borrower owes Lender     ONE HUNDRED THIRTY THREE THOUSAND FIVE HUNDRED AND
00/100                  Dollars (U.S. $133,500.00      ) plus interest. Borrower has promised to pay
this debt in regular Periodic Payments and to pay the debt in full not later than    OCTOBER 1, 2033

1 of 20

Exhibit A

(F)   "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G)   "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H)   "Riders" means all Riders to this Security Instrument that are executed by Borrower.  The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☒ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☒ Other(s) [specify] |
| ☒ 1-4 Family Rider | ☐ Biweekly Payment Rider | Prepayment Rider to Sec/Int. |

(I)   "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(J)   "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(K)   "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L)   "Escrow Items" means those items that are described in Section 3.
(M)   "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(N)   "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(O)   "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P)   "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter.  As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
(Q)   "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.  For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the

COUNTY           of  RAMSEY                                  :
[Type of Recording Jurisdiction]                              [Name of Recording Jurisdiction]
A.P.N. #: 35-29-23-14-0194

Lot 13, Block 2, Syndicate No. 1 Addition

which currently has the address of  730 SHERBURNE AVE
                                                           [Street]
SAINT PAUL                    , Minnesota      55104              ("Property Address"):
                     [City]                    [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property.  All replacements and additions shall also be covered by this Security Instrument.  All of the foregoing is referred to in this Security Instrument as the "Property."  Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.  Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS.  Borrower and Lender covenant and agree as follows:
1.   Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.  Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note.  Borrower shall also pay funds for Escrow Items pursuant to Section 3.  Payments due under the Note and this Security Instrument shall be made in U.S. currency.  However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.  Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.  Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under

RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.  Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.  Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so

obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.  **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.  **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10.  **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether

or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice

address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one conformed copy of the Note and of this Security Instrument at the time such documents are executed or within a reasonable time thereafter.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might

result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law.  There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note.  If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing.  If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.  If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph.  The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21.  Hazardous Substances.  As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property.  Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property.  The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property.  If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.  Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS.  Borrower and Lender further covenant and agree as follows:

22.  Acceleration; Remedies.  Lender shall give notice to Borrower by certified mail to the address of the Property or another address designated by Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise).  The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result

in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees.

If Lender invokes the power of sale, Lender shall cause a copy of a notice of sale to be served upon any person in possession of the Property. Lender shall publish a notice of sale, and the Property shall be sold at public auction in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waiver of Homestead.** Borrower waives all right of homestead exemption in the Property.

25. **Interest on Advances.** The interest rate on advances made by Lender under this Security Instrument shall not exceed the maximum rate allowed by Applicable Law.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)                    _____ (Seal)
DAVID B LISET                           -Borrower                                                           -Borrower

_____ (Seal)                    _____ (Seal)
                                        -Borrower                                                           -Borrower

_____ (Seal)                    _____ (Seal)
                                        -Borrower                                                           -Borrower

Witness:                                                   Witness:

_____                           _____

MINNESOTA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3024 01/01                              Page 12 of 13                    DocMagic eForms 800-649-1362
                                                                             www.docmagic.com

State of Minnesota,
County of RAMSEY

    The instrument was acknowledged before me on   September 12th, 2003        by
DAVID B LISET, A SINGLE MAN

Notary Public

(Seal)                My commission expires:

MARSHA KAYE HOLMGREN
Notary Public - Minnesota
My Commission Expires 1/31/2005

This instrument was drafted by:
GREAT NORTHERN FINANCIAL GROUP, INC.
200 COON RAPIDS BLVD, #210 COON
RAPIDS MN 55433

Tax statements for the real property described in this instrument should be sent to:
GREAT NORTHERN FINANCIAL GROUP, INC.
200 COON RAPIDS BOULEVARD, SUITE 210
COON RAPIDS, MINNESOTA, 55433

DocMagic €Rooms 800-649-1362
www.docmagic.com

Loan Number:

## 1-4 FAMILY RIDER
### (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this 12th day of SEPTEMBER 2003 ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to GREAT NORTHERN FINANCIAL GROUP, INC.

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

730 SHERBURNE AVE, SAINT PAUL, MINNESOTA 55104
[Property Address]

1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY
INSTRUMENT. In addition to the Property described in Security Instrument, the following
items now or hereafter attached to the Property to the extent they are fixtures are added to the
Property description, and shall also constitute the Property covered by the Security Instrument:
building materials, appliances and goods of every nature whatsoever now or hereafter located
in, on, or used, or intended to be used in connection with the Property, including, but not
limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas,
water, air and light, fire prevention and extinguishing apparatus, security and access control
apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves,
refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors,
screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and
attached floor coverings, all of which, including replacements and additions thereto, shall be
deemed to be and remain a part of the Property covered by the Security Instrument. All of the
foregoing together with the Property described in the Security Instrument (or the leasehold
estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and
the Security Instrument as the "Property."

B. USE OF PROPERTY; COMPLIANCE WITH LAW. Borrower shall not seek,
agree to or make a change in the use of the Property or its zoning classification, unless Lender
has agreed in writing to the change. Borrower shall comply with all laws, ordinances,
regulations and requirements of any governmental body applicable to the Property.

C. SUBORDINATE LIENS. Except as permitted by federal law, Borrower shall not
allow any lien inferior to the Security Instrument to be perfected against the Property without
Lender's prior written permission.

D.  RENT LOSS INSURANCE.  Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

E.  "BORROWER'S RIGHT TO REINSTATE" DELETED.  Section 19 is deleted.

F.  BORROWER'S OCCUPANCY.  Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

G.  ASSIGNMENT OF LEASES.  Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property.  Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion.  As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

H.  ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.  Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable.  Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents.  However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent.  This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I.   CROSS-DEFAULT PROVISION.**  Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

_____ (Seal)        _____ (Seal)
DAVID B LISET                        -Borrower                                         -Borrower


_____ (Seal)        _____ (Seal)
                                     -Borrower                                         -Borrower


_____ (Seal)        _____ (Seal)
                                     -Borrower                                         -Borrower


MULTISTATE 1-4 FAMILY RIDER
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3170 1/01                              Page 3 of 3

DocMagic *EForms* 800-649-1362
www.docmagic.com

# PREPAYMENT RIDER

Loan Number: ███████████

Date: SEPTEMBER 12, 2003

Borrower(s): DAVID B LISET

THIS PREPAYMENT RIDER (the "Rider") is made this 12th day of SEPTEMBER
2003                    , and is incorporated into and shall be deemed to amend and supplement
the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the
undersigned ("Borrower") to secure repayment of Borrower's promissory note (the "Note") in favor of
GREAT NORTHERN FINANCIAL GROUP, INC.

("Lender"). The Security Instrument encumbers the Property more specifically described in the Security
Instrument and located at

730 SHERBURNE AVE, SAINT PAUL, MINNESOTA 55104

[Property Address]

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A.   PREPAYMENT CHARGE**

The Note provides for the payment of a prepayment charge as follows:

**5       . BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE**

I have the right to make payments of Principal at any time before they are due.
A payment of Principal only is known as a "Prepayment." When I make a Prepayment,
I will tell the Note Holder in writing that I am doing so. I may not designate a payment
as a Prepayment if I have not made all the monthly payments due under the Note.

The Note Holder will use my Prepayments to reduce the amount of Principal that
I owe under the Note. However, the Note Holder may apply my Prepayment to the
accrued and unpaid interest on the Prepayment amount, before applying my Prepayment
to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be
no changes in the due dates of my monthly payment unless the Note Holder agrees in
writing to those changes.

If the Note provides for changes in the interest rate, my partial Prepayment may
reduce the amount of my monthly payments after the first Change Date following my
partial Prepayment. However, any reduction due to my partial Prepayment may be offset
by an interest rate increase.

If within TWENTY FOUR  ( 24      ) months after the date the Note is
executed I make a full Prepayment (other than a full Prepayment in connection with the
sale of the Property), I will pay a Prepayment charge equal to the lesser of  (i)

TWO           percent ( 2.000        %) of the unpaid Principal balance at the
time of Prepayment, or (ii) 60 days' Interest on the unpaid Principal balance at the time of
Prepayment.

Notwithstanding the foregoing provisions, I may make a full Prepayment without
paying a Prepayment charge in connection with a bona fide and arms-length sale of all or
any part of, or any legal or beneficial interest in, the Property  within   the first  24
months of the term of the Note.  The phrase "bona fide and arms-length sale" means a sale
in which all of the parties involved in the transaction, including without limitation, the
buyer, seller, lender, real estate agent or broker, are independent of one another and
unrelated by familial or financial interests.  I agree to provide the Note Holder with any
and all evidence reasonably requested by the Note Holder to substantiate that the sale of
the Property is bona fide and arms-length.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this
Rider.


_____ (Seal)           _____ (Seal)
DAVID B LISET           -Borrower                                  -Borrower


_____ (Seal)           _____ (Seal)
                        -Borrower                                  -Borrower


_____ (Seal)           _____ (Seal)
                        -Borrower                                  -Borrower

**ADJUSTABLE  RATE  RIDER** Loan Number: ▮▮▮▮▮▮
(LIBOR Index - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 12th day of SEPTEMBER , 2003 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to GREAT NORTHERN FINANCIAL GROUP, INC., A MINNESOTA CORPORATION (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

730 SHERBURNE AVE, SAINT PAUL, MINNESOTA 55104
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A.   INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of 7.375 %. The Note provides for changes in the interest rate and the monthly payments, as follows:
4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A) Change Dates
The interest rate I will pay may change on the 1st day of OCTOBER , 2005 and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."
(B) The Index
Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar deposits in the London market based on quotations of major banks, as published in The Wall Street Journal. The rate published in The Wall Street Journal on the date 45 days before each Change Date as being the London interbank offered rate on the preceding business day is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.
(C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding SEVEN AND 375/1000 percentage points ( 7.375 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4 (D) below, this rounded amount will be my new interest rate until the next Change Date.
The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.
(D) Limits on Interest Rate Changes
The interest rate I am required to pay at the first Change Date will not be greater than 10.375 % or less than 7.375 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE AND 000/1000 percentage points ( 1.000 %) from the rate of interest I have been paying for the preceding 6 month(s). My interest rate will never be greater than 13.375 %.
(E) Effective Date of Changes
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.
(F) Notice of Changes
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.
B.   TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER
Uniform Covenant 17 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_David B Liset_ _____ [Seal]        _____ [Seal]
DAVID B LISET                    -Borrower                                -Borrower

_____ [Seal]        _____ [Seal]
                        -Borrower                                -Borrower

_____ [Seal]        _____ [Seal]
                        -Borrower                                -Borrower

Document Systems, Inc.                    Page 2 of 2                    Adjustable Rate Rider (LIBOR Index-Rate Caps)
                                                                         GMAC Residential Funding Form 1556 (10/91)

Document# 4279178
Recorded 05/10/2011 0900
County Recorder, Ramsey County, MN
2.2.5  556441

Dated: 9/10/2008                    CORPORATION ASSIGNMENT of MORTGAGE
Prepared By & After Recording Return to:
**MGC Mortgage Inc**
Document Control, Carissa Golden
PO BOX 251686                       RFC Loan Number: ▮▮▮▮▮
Plano, Texas  75025-9933            Seller Loan Number: ▮▮▮▮▮

MIN: ▮▮▮▮▮              MERS Phone: ▮▮▮▮▮

**FOR VALUE RECEIVED, 'Mortgage Electronic Registration Systems, Inc. (MERS)',** *as nominee
for Great Northern Financial Group, Inc.*
**P.O. Box 2026, Flint, Michigan 48501-2026**

the undersigned hereby grants, assigns and transfers to

LPP Mortgage, LTD.
6000 Legacy Drive
Plano, TX 75024

all beneficial interest under that certain Mortgage dated 9/12/2003
executed by DAVID B LISET, *A Single Man*
*(MERS as nominee f/)*
TO/FOR: *Great Northern Financial Group, Inc.*

and recorded in Book __NA__ on Page __NA__ as Instrument No. __3681250__ on __10-1-03__
of official Records in the County Recorder's Office of __Ramsey__ County, Minnesota.

Property Address:    **730 SHERBURNE AVE  SAINT PAUL, MN  55104**
Mortgage Amount:    **$133,500.00**
TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon
with interest, and all rights accrued or to accrue under said Mortgage.

                                                'Mortgage Electronic Registration Systems, Inc. (MERS)' *

                                        BY *Jeanne Smith* (signature)
STATE OF                    Minnesota)  NAME: Jeanne Smith
COUNTY OF                   Hennepin)   TITLE: Limited Signing Officer

On 9/10/2008 before me, the undersigned, a Notary Public in and for said State personally appeared Jeanne
Smith, Limited Signing Officer of 'Mortgage Electronic Registration Systems, Inc. (MERS)' * personally known
to me to be the person whose name is subscribed to the within instrument and acknowledged to me that s/he
executed the same in his/her authorized capacity, and that by his/her signature on the instrument the entity upon
behalf of which the person acted, executed the instrument.  WITNESS my hand and official seal.

*Diane M Meistad* (signature)
Notary Public in and for said State
Prepared by Diane Meistad, Residential Funding Company,
LLC, One Meridian Crossings, Suite 100, Minneapolis, MN
55423, (952) 979-4000.

DIANE M. MEISTAD
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES 01/31/2010

**Exhibit B**

**Document# 4377806**
**Recorded 01/03/2013 1500**
**County Recorder, Ramsey County, MN**
**No Delinquent Taxes && Transfer Entered**
**01/03/2013**
**Deed Tax Paid 01/03/2013**
**4.5.8  756344**

(Top 3 inches reserved for recording data)

| | |
|---|---|
| **CONTRACT FOR DEED**<br>by Individual(s) | **Minnesota Uniform Conveyancing Blanks**<br>Form 30.1.1 (2010) |

DATE: May 20, 2010
*(month/day/year)*

THIS CONTRACT FOR DEED (the "**Contract**") is made on the above date by David Liset, a single person
*(Insert name and marital status of each Seller)*
("**Seller**"),

and Ying Xiong
*(Insert name of each Purchaser)*
("**Purchaser**"). *(Check box if ☐ joint tenancy.)*

Seller and Purchaser agree to the following terms:

1. Property Description.  Seller hereby sells and Purchaser hereby buys real property in Ramsey
County, Minnesota, described as follows:
Lot 13, Block 2, Syndicate No. 1 Addition

*Check here if all or part of the described real property is Registered (Torrens)* ☐

together with all hereditaments and appurtenances belonging thereto (the "**Property**"). Unless otherwise specified, Seller hereby delivers
possession of the Property to Purchaser on the date hereof.

*Check applicable box:*
■ The Seller certifies that the Seller does not know of any wells on
  the described real property.
☐ A well disclosure certificate accompanies this document or has
  been electronically filed. (If electronically filed, insert WDC
  number:                    )
☐ I am familiar with the property described in this instrument and
  I certify that the status and number of wells on the described
  real property have not changed since the last previously filed
  well disclosure certificate.

Exhibit C

          

2. **Title.** Seller warrants that title to the Property is, on the date of this Contract, subject only to the following exceptions:

    (a) Covenants, conditions, restrictions (without effective forfeiture provisions) and declarations of record, if any;

    (b) Reservation of minerals or mineral rights by the State of Minnesota, if any;

    (c) Utility and drainage easements which do not interfere with present improvements;

    (d) Applicable laws, ordinances, and regulations;

    (e) The lien of real estate taxes and installments of special assessments which are payable by Purchaser pursuant to paragraph 6 of this Contract; and

    (f) The following liens or encumbrances:

    Mortgage to GMAC Mortgage, LLC, Loan Number ███████ originally executed on November 1, 2003 in favor of Great Northern Financial Group, Inc.

3. **Delivery of Deed and Evidence of Title.** Upon Purchaser's full performance of this Contract, Seller shall:

    (a) Execute, acknowledge, and deliver to Purchaser a _Warranty_ Deed, in recordable form, conveying marketable title to the Property to Purchaser, subject only to the following exceptions:

        (i) Those exceptions referred to in paragraph 2(a), (b), (c), (d), and (e) of this Contract;

        (ii) Liens, encumbrances, adverse claims or other matters which Purchaser has created, suffered or permitted to accrue after the date of this Contract; and

        (iii) The following liens or encumbrances:

        Mortgage to GMAC Mortgage, LLC, Loan Number ███████ originally executed on November 1, 2003 in favor of Great Northern Financial Group, Inc.

    (b) Deliver to Purchaser the abstract of title to the Property, without further extension, to the extent required by the purchase agreement (if any) between Seller and Purchaser.

4. **Purchase Price.** Purchaser shall pay to Seller at _a place designated by Seller_ _____ the sum of _Fifty Thousand Dollars_ _____ Dollars ($_50,000.00_ ), as and for the purchase price (the "**Purchase Price**") for the Property, payable as follows:

The Purchase Price reflects the price contained in the January 11, 2010 Purchase Agreement between Purchaser and Seller, and was the approximate amount of the outstanding balance on Seller's Mortgage at that time. Subsequent to the Purchase Agreement, Purchaser has made all of Seller's Mortgage Payments directly to Seller's Mortgagee. Purchaser shall continue to make all payments directly to the Seller's Mortgagee. As of April 19, 2010, Seller's Payoff Amount to its Mortgagee was $49,421.23 and Purchaser's payments, including taxes and insurance is approximately $554.60. Purchaser shall pay Seller's mortgage in full, or otherwise re-finance the loan, on or before December 31, 2015. Said payment in full or re-finance shall constitute Purchaser's full performance of the terms of this Contract for Deed. Purchaser's failure to make payments to Seller's Mortgagee, when such amounts become due and owing, shall be deemed a default on this Contract for Deed. Purchaser shall also pay any late fees or penalties imposed by Seller's Mortgagee in the event that Purchaser fails to pay Seller's Mortgagee in a timely manner.

5. **Prepayment.** Unless otherwise provided in this Contract, Purchaser shall have the right to fully or partially prepay this Contract at any time without penalty. Any partial prepayment shall be applied first to payment of amounts then due under this Contract, including unpaid accrued interest, and the balance shall be applied to the principal installments to be paid in the inverse order of their maturity. Partial prepayment shall not postpone the due date of the installments to be paid pursuant to this Contract or change the amount of such installments.

6. **Real Estate Taxes and Assessments.** Real estate taxes and installments of special assessments which are due and payable in the year in which this Contract is dated shall be paid as follows:

All taxes and assessments are included in Seller's mortgage payment, and Purchaser shall continue to pay any escrow amounts required by Seller's Mortgagee throughout the term of this Contract for Deed.

Purchaser shall pay, before penalty accrues, all real estate taxes and installments of special assessments assessed against the Property which are due and payable in all subsequent years. Seller warrants that the real estate taxes and installments of special assessments which were due and payable in the years preceding the year in which this Contract is dated are paid in full. If the Property is subject to a recorded declaration providing for assessments to be levied against the Property by any owners' association, Purchaser shall promptly pay, when due, all assessments imposed by the owners' association or other governing body as required by the provisions of the declaration or other related documents.

7. **Property Insurance.**

(a) **Insured Risks and Amounts.** Purchaser shall keep all buildings, improvements, and fixtures now or later located on or a part of the Property insured against loss by fire, lightning and such other perils as are included in a standard "all-risk" endorsement, and against loss or damage by all other risks and hazards covered by a standard extended coverage insurance policy, including, without limitation, vandalism, malicious mischief, burglary, theft and, if applicable, steam boiler explosion. Such insurance shall be in an amount no less than the full replacement cost of the buildings, improvements, and fixtures, without deduction for physical depreciation. If any of the buildings, improvements, or fixtures are located in a federally designated flood prone area, and if flood insurance is available for that area, Purchaser shall procure and maintain flood insurance in amounts reasonably satisfactory to Seller.

(b) **Other Terms.** The insurance policy shall contain a loss payable clause in favor of Seller which provides that Seller's right to recover under the insurance shall not be impaired by any acts or omissions of Purchaser or Seller, and that Seller shall otherwise be afforded all rights and privileges customarily provided a mortgagee under the so-called standard mortgage clause.

(c) **Notice of Damage.** In the event of damage to the Property by fire or other casualty, Purchaser shall promptly give notice of such damage to Seller and the insurance company.

8. **Damage to the Property.**

(a) **Application of Insurance Proceeds.** If the Property is damaged by fire or other casualty, the insurance proceeds paid on account of such damage shall be applied to payment of the amounts payable by Purchaser under this Contract, even if such amounts are not then due to be paid, unless Purchaser makes a permitted election described in the next paragraph. Such amounts shall be first applied to unpaid accrued interest and next to the installments to be paid as provided in this Contract in the inverse order of their maturity. Such payment shall not postpone the due date of the installments to be paid pursuant to this Contract or change the amount of such installments. The balance of insurance proceeds, if any, shall be the property of Purchaser.

(b) **Purchaser's Election to Rebuild.** If Purchaser is not in default under this Contract, or after curing any such default, and if the mortgagees in any prior mortgages and sellers in any prior contracts for deed do not require otherwise, Purchaser may elect to have that portion of such insurance proceeds necessary to repair, replace, or restore the damaged Property (the "Repairs") deposited in escrow with a bank or title insurance company qualified to do business in the State of Minnesota, or such other party as may be mutually agreeable to Seller and Purchaser. The election may only be made by written notice to Seller within sixty (60) days after the damage occurs. Also, the election will only be permitted if the plans and specifications and contracts for the Repairs are approved by Seller, which approval Seller shall not unreasonably withhold or delay. If such a permitted election is made by Purchaser, Seller and Purchaser shall jointly deposit, when paid, such insurance proceeds into such escrow. If such insurance proceeds are insufficient for the Repairs, Purchaser shall, before the commencement of the Repairs, deposit into such escrow sufficient additional money to insure the full payment for the Repairs. Even if the insurance proceeds are unavailable or are insufficient to pay the cost of the Repairs, Purchaser shall at all times be responsible to pay the full cost of the Repairs. All escrowed funds shall be disbursed by the

escrowee in accordance with generally accepted sound construction disbursement procedures. The costs incurred or to be incurred on account of such escrow shall be deposited by Purchaser into such escrow before the commencement of the Repairs. Purchaser shall complete the Repairs as soon as reasonably possible and in a good and workmanlike manner, and in any event the Repairs shall be completed by Purchaser within one (1) year after the damage occurs. If, following the completion of and payment for the Repairs, there remains any undisbursed escrow funds, such funds shall be applied to payment of the amounts payable by Purchaser under this Contract in accordance with paragraph 8(a) above.

(c) Owners' Association.  If the Property is subject to a recorded declaration, so long as the owners' association maintains a master or blanket policy of insurance against fire, extended coverage perils and such other hazards and in such amount as are required by this Contract, then: (i) Purchaser's obligation in the Contract to maintain hazard insurance coverage on the Property is satisfied; (ii) the provisions of paragraph 8(a) of this Contract regarding application of insurance proceeds shall be superseded by the provisions of the declaration or other related documents; and (iii) in the event of a distribution of insurance proceeds in lieu of restoration or repair following an insured casualty loss to the Property, any such proceeds payable to Purchaser are hereby assigned and shall be paid to Seller for application to the sum secured by this Contract, with the excess, if any, paid to Purchaser.

9.  Injury or Damage Occurring on the Property.

(a)  Liability.  Seller shall be free from liability and claims for damages by reason of injuries occurring on or after the date of this Contract to any person or persons or property while on or about the Property. Purchaser shall defend and indemnify Seller from all liability, loss, cost, and obligations, including reasonable attorneys' fees, on account of or arising out of any such injuries. However, Purchaser shall have no liability or obligation to Seller for such injuries which are caused by the negligence or intentional wrongful acts or omissions of Seller.

(b)  Liability Insurance.  Purchaser shall, at Purchaser's own expense, procure and maintain liability insurance against claims for bodily injury, death and property damage occurring on or about the Property in amounts reasonably satisfactory to Seller and naming Seller as an additional insured.

10.  Insurance Generally.  The insurance which Purchaser is required to procure and maintain pursuant to paragraphs 7 and 9 of this Contract shall be issued by an insurance company or companies licensed to do business in the State of Minnesota and acceptable to Seller. The insurance shall be maintained by Purchaser at all times while any amount remains unpaid under this Contract. The insurance policies shall provide for not less than ten (10) days written notice to Seller before cancellation, non-renewal, termination or change in coverage, and Purchaser shall deliver to Seller a duplicate original or certificate of such insurance policy or policies.

11.  Condemnation.  If all or any part of the Property is taken in condemnation proceedings instituted under power of eminent domain or is conveyed in lieu thereof under threat of condemnation, the money paid pursuant to such condemnation or conveyance in lieu thereof shall be applied to payment of the amounts payable by Purchaser under this Contract, even if such amounts are not then due to be paid. Such amounts shall be applied in the same manner as a prepayment as provided in paragraph 5 of this Contract. Such payments shall not postpone the due date of the installments to be paid pursuant to this Contract or change the amount of such installments. The balance, if any, shall be the property of Purchaser.

12.  Waste, Repair, and Liens.  Purchaser shall not remove or demolish any buildings, improvements, or fixtures now or later located on or a part of the Property, nor shall Purchaser commit or allow waste of the Property. Purchaser shall maintain the Property in good condition and repair.  Purchaser shall not create or permit to accrue liens or adverse claims against the Property which constitute a lien or claim against Seller's interest in the Property. Purchaser shall pay to Seller all amounts, costs and expenses, including reasonable attorneys' fees, incurred by Seller to remove any such liens or adverse claims.

13.  Compliance with Laws.  Except for matters which Seller has created, suffered, or permitted to exist prior to the date of this Contract, Purchaser shall comply or cause compliance with all laws and regulations of any governmental authority which affect the Property or the manner of using or operating the same, and with all restrictive covenants, if any, affecting title to the Property or the use thereof.

Minnesota Uniform Conveyancing Blanks  Form 30.1.1

14. Recording of Contract; Deed Tax. Purchaser shall, at Purchaser's expense, record this Contract in the Office of the County Recorder or Registrar of Titles in the county in which the Property is located within four (4) months after the date hereof. Purchaser shall pay any penalty imposed under Minn. Stat. 507.235 for failure to timely record the Contract. Seller shall, upon Purchaser's full performance of this Contract, pay the deed tax due upon the recording of the deed to be delivered by Seller.

15. Notice of Assignment.  If either Seller or Purchaser assigns its interest in the Property, the assigning party shall promptly furnish a copy of such assignment to the non-assigning party.

16. Protection of Interests.  If Purchaser fails to pay any sum of money required under the terms of this Contract or fails to perform any of the Purchaser's obligations as set forth in this Contract, Seller may, at Seller's option, pay the same or cause the same to be performed, or both, and the amounts so paid by Seller and the cost of such performance shall be payable at once, with interest at the rate stated in paragraph 4 of this Contract, as an additional amount due Seller under this Contract. If there now exists, or if Seller hereafter creates, suffers or permits to accrue, any mortgage, contract for deed, lien or encumbrance against the Property which is not herein expressly assumed by Purchaser, and provided Purchaser is not in default under this Contract, Seller shall timely pay all amounts due thereon, and if Seller fails to do so, Purchaser may, at Purchaser's option, pay any such delinquent amounts or take any actions reasonably necessary to cure defaults thereunder and deduct the amounts so paid together with interest at the rate provided in this Contract from the payments next coming due under this Contract.

17. Defaults and Remedies.  The time of performance by Purchaser of the terms of this Contract is an essential part of this Contract. If Purchaser fails to timely perform any term of this Contract, Seller may, at Seller's option, elect to declare this Contract cancelled and terminated by notice to Purchaser in accordance with applicable law or elect any other remedy available at law or in equity. If Seller elects to terminate this Contract, all right, title, and interest acquired under this Contract by Purchaser shall then cease and terminate, and all improvements made upon the Property and all payments made by Purchaser pursuant to this Contract (including escrow payments, if any) shall belong to Seller as liquidated damages for breach of this Contract. Neither the extension of the time for payment of any sum of money to be paid hereunder nor any waiver by Seller of Seller's rights to declare this Contract forfeited by reason of any breach shall in any manner affect Seller's right to cancel this Contract because of defaults subsequently occurring, and no extension of time shall be valid unless agreed to in writing. After service of notice of default and failure to cure such default within the period allowed by law, Purchaser shall, upon demand, surrender possession of the Property to Seller, but Purchaser shall be entitled to possession of the Property until the expiration of such period. Failure by Seller to exercise one or more remedies available under this paragraph 17 shall not constitute a waiver of the right to exercise such remedy or remedies thereafter.

18. Binding Effect.  The terms of this Contract shall run with the land and bind the parties hereto and the successors in interest.

19. Headings.  Headings of the paragraphs of this Contract are for convenience only and do not define, limit, or construe the contents of such paragraphs.

20. Additional Terms: *Check here if ☐ an addendum to this Contract containing additional terms and conditions is attached hereto.*

Seller

_(signature)_ David Liset

_(signature)_

Purchaser

_(signature)_ Xing Xiong

_(signature)_

Minnesota Uniform Conveyancing Blanks   Form 30.1.1

State of Minnesota, County of ~~Ramsey~~ *Isanti*

This instrument was acknowledged before me on  May 20, 2010            , by  David Liset, a single person
                                             *(month/day/year)*

*(insert name and marital status of each Seller)*

KRISTINE K ERICKSON
Notary Public
Minnesota
My Commission Expires January 31, 2014

*(signature of notarial officer)*

Title (and Rank):  *Notary Public*

My commission expires:  *1-31-2014*
                        *(month/day/year)*

State of Minnesota, County of ~~Ramsey~~ *Isanti*

This instrument was acknowledged before me on  May 20, 2010            , by  Ying Xiong, a single person
                                             *(month/day/year)*

*(insert name and marital status of each Purchaser)*

(Seal, if any)

KRISTINE K ERICKSON
Notary Public
Minnesota
My Commission Expires January 31, 2014

*(signature of notarial officer)*

Title (and Rank):  *Notary Public*

My commission expires:  *1-31-2014*
                        *(month/day/year)*

THIS INSTRUMENT WAS DRAFTED BY:
*(insert name and address)*

Timothy R. Maher, Esq.
310 Fourth Avenue South
Suite 950
Minneapolis, Mn. 55415

TAX STATEMENTS FOR THE REAL PROPERTY DESCRIBED IN THIS
INSTRUMENT SHOULD BE SENT TO:
*(insert name and address of Grantee to whom tax statements should be sent)*

Ying Xiong
892 Hamline Avenue North
Saint Paul, Mn. 55104

Note:  Failure to record this contract for deed may give other parties priority over Purchaser's interest in the property.

Document# 4319472
Recorded 02/08/2012 1100
County Recorder, Ramsey County, MN
1.2.3 702693

SHERIFF'S CERTIFICATE OF SALE

STATE OF MINNESOTA   )

COUNTY OF Ramsey   )

I, Matthew Bostrom, Sheriff of the County of Ramsey, State of Minnesota,
do hereby certify; that pursuant to the printed Notice of Mortgage Foreclosure
sale hereto attached and the power of sale contained in that certain mortgage
therein described, to wit:

DATE OF MORTGAGE: September 12, 2003
MORTGAGOR: David B. Liset, a single man.
MORTGAGEE:  Mortgage Electronic Registration Systems, Inc..
PROPERTY ID NO.   35-29-23-140194
DATE AND PLACE OF RECORDING:   Recorded October 1, 2003, Ramsey County
Recorder, Document No. 3681250.
ASSIGNMENTS OF MORTGAGE:       Assigned to:  LPP Mortgage Ltd..

TRANSACTION AGENT:  Mortgage Electronic Registration Systems, Inc.
TRANSACTION AGENT'S   MORTGAGE   IDENTIFICATION   NUMBER   ON   MORTGAGE:

LENDER OR BROKER AND MORTGAGE ORIGINATOR STATED ON MORTGAGE:   Great
Northern Financial Group, Inc.
RESIDENTIAL MORTGAGE SERVICER: Dovenmuehle Mortgage, Corp.
MORTGAGED PROPERTY ADDRESS:  730 Sherburne Avenue, Saint Paul, MN 55104
TAX PARCEL I.D. #:  35-29-23-140194
INTEREST RATE IN EFFECT ON DATE OF SHERIFF'S SALE:  6.5%

I did, at the time and place in said notice specified, to wit: at
Sheriff's Office, Lowry Building / City Hall Annex, 25 West 4th Street, Suite
150, St. Paul, MN, on February 7, 2012, at 10:00 am, offer for sale and sell at
public auction to the highest and best bidder, the tract of land lying and
being in the County of Ramsey, State of Minnesota, described as follows, to-
wit:

Lot 13, Block 2, Syndicate No. 1 Addition.

# Exhibit D

1-13



## SHERIFF'S CERTIFICATE OF SALE

STATE OF MINNESOTA   )

COUNTY OF Ramsey   )

I, Matthew Bostrom, Sheriff of the County of Ramsey, State of Minnesota, do hereby certify; that pursuant to the printed Notice of Mortgage Foreclosure sale hereto attached and the power of sale contained in that certain mortgage therein described, to wit:

DATE OF MORTGAGE: September 12, 2003
MORTGAGOR: David B. Liset, a single man.
MORTGAGEE: Mortgage Electronic Registration Systems, Inc..
PROPERTY ID NO.   35-29-23-140194
DATE AND PLACE OF RECORDING:   Recorded October 1, 2003, Ramsey County Recorder, Document No. 3681250.
ASSIGNMENTS OF MORTGAGE:       Assigned to: LPP Mortgage Ltd..

TRANSACTION AGENT: Mortgage Electronic Registration Systems, Inc.
TRANSACTION AGENT'S MORTGAGE IDENTIFICATION NUMBER ON MORTGAGE:
█████████
LENDER OR BROKER AND MORTGAGE ORIGINATOR STATED ON MORTGAGE:   Great Northern Financial Group, Inc.
RESIDENTIAL MORTGAGE SERVICER:   Dovenmuehle Mortgage, Corp.
MORTGAGED PROPERTY ADDRESS: 730 Sherburne Avenue, Saint Paul, MN 55104
TAX PARCEL I.D. #:  35-29-23-140194
INTEREST RATE IN EFFECT ON DATE OF SHERIFF'S SALE:  6.5%

I did, at the time and place in said notice specified, to wit: at Sheriff's Office, Lowry Building / City Hall Annex, 25 West 4th Street, Suite 150, St. Paul, MN, on February 7, 2012, at 10:00 am, offer for sale and sell at public auction to the highest and best bidder, the tract of land lying and being in the County of Ramsey, State of Minnesota, described as follows, to-wit:

Lot 13, Block 2, Syndicate No. 1 Addition.

1-13



and did strike off and sell the same to LPP Mortgage Ltd., for the sum of
($52,108.62), said purchaser being the highest bidder and said sum being the
highest and best bid offered therefore; and that said sale was in all respects,
openly, honestly, fairly and lawfully conducted, and the time allowed by law
for redemption by the mortgagor, his personal representatives or assigns is
twelve (12mo) months from the date of said sale.

    In Testimony Whereof, I have hereunto set my hand on February 7, 2012.


                              Matthew Bostrom

                              As Sheriff of Ramsey County, MN

                              By _____, Deputy


STATE OF MINNESOTA   )

COUNTY OF Ramsey   )

    On February 7, 2012, before me personally appeared
Michael Schmid _____, to me known to be the Deputy Sheriff of said
County, and the person described in and who executed the foregoing instrument,
and acknowledged that he executed the same as his free act and deed as such
Deputy Sheriff.


                              Karen P. Harer
                              Notary Public


Send tax statements to:                  KAREN P. HARER
LPP Mortgage Ltd.                        NOTARY PUBLIC - MINNESOTA
1 Corporate Drive, Suite 360             My Commission Expires Jan. 31, 2017
Lake Zurich, IL 600478945


This is a communication from a debt collector.

Drafted By:
USSET, WEINGARDEN AND LIEBO, P.L.L.P.
4500 Park Glen Road, #300
St. Louis Park, MN  55416
(952) 925-6888

## NOTICE OF MORTGAGE FORECLOSURE SALE

**THE RIGHT TO VERIFICATION OF THE DEBT AND IDENTITY OF THE ORIGINAL CREDITOR WITHIN THE TIME PROVIDED BY LAW IS NOT AFFECTED BY THIS ACTION.**

NOTICE IS HEREBY GIVEN, that default has occurred in conditions of the following described mortgage:

DATE OF MORTGAGE: September 12, 2003

MORTGAGOR: David B. Liset, a single man.

MORTGAGEE: Mortgage Electronic Registration Systems, Inc.

DATE AND PLACE OF RECORDING: Recorded October 1, 2003, Ramsey County Recorder, Document No. 3681250.

ASSIGNMENTS OF MORTGAGE: Assigned to: LPP Mortgage Ltd.

TRANSACTION AGENT: Mortgage Electronic Registration Systems, Inc.

TRANSACTION AGENT'S MORTGAGE IDENTIFICATION NUMBER ON MORTGAGE: 1002614-9537041235-9

LENDER OR BROKER AND MORTGAGE ORIGINATOR STATED ON MORTGAGE: Great Northern Financial Group, Inc.

RESIDENTIAL MORTGAGE SERVICER: Dovenmuehle Mortgage, Inc.

MORTGAGED PROPERTY ADDRESS: 730 Sherburne Avenue, Saint Paul, MN 55104

TAX PARCEL I.D. #: 35-29-23-140194

LEGAL DESCRIPTION OF PROPERTY: Lot 13, Block 2, Syndicate No. 1 Addition.

COUNTY IN WHICH PROPERTY IS LOCATED: Ramsey

ORIGINAL PRINCIPAL AMOUNT OF MORTGAGE: $133,500.00

AMOUNT DUE AND CLAIMED TO BE DUE AS OF DATE OF NOTICE, INCLUDING TAXES, IF ANY, PAID BY MORTGAGEE: $49,792.49

That prior to the commencement of this mortgage foreclosure proceeding Mortgagee/Assignee of Mortgagee complied with all notice requirements as required by statute; That no action or proceeding has been instituted at law or otherwise to recover the debt secured by said mortgage, or any part thereof;

PURSUANT to the power of sale contained in said mortgage, the above described property will be sold by the Sheriff of said county as follows:

DATE AND TIME OF SALE: February 7, 2012 at 10:00 AM

PLACE OF SALE: Sheriff's Office, Lowry Building / City Hall Annex, 25 West 4th Street,

---

## AFFIDAVIT OF PUBLICATION

State of Minnesota, County of Ramsey

Charles Shaw, being duly sworn on oath says she/he is and during all the times herein stated has been the publisher or the publisher's designated agent in charge of the newspaper known as the St. Paul Legal Ledger and has full knowledge of the facts which are stated below:

(A) The newspaper has complied with all of the requirements constituting qualifications as a legal newspaper, as provided by Minnesota Statute 331A.02, 331A.07, and other applicable laws, as amended.

(B) The printed Mortgage Foreclosure Sale, ███████ which is attached was cut from the columns of said newspaper and was printed and published on December 19, 2011, and was thereafter printed and published:

Monday, 12/26/2011
Monday, 01/02/2012
Monday, 01/09/2012
Monday, 01/16/2012
Monday, 01/23/2012

and printed below is a copy of the lower case alphabet from A to Z, both inclusive, which is hereby acknowledged as being the size and kind of type used in the composition and publication of said notice:

abcdefghijklmnopqrstuvwxyz

*Charlie E. Shaw*

Subscribed and sworn to before me this 23rd day of January, 2012

STATE OF MINNESOTA )

                    )ss.

COUNTY OF RAMSEY )

**AFFIDAVIT OF SERVICE**
**ON OCCUPANTS**

Deputy Sheriff **Denise Knafla,** being duly sworn, on oath says; that on the **29th,** day of **December, 2011,** he/she went upon the land and premises, **730 Sherburne Avenue, St. Paul,** described in the printed Notice of Mortgage Foreclosure Sale, Help For Home Owners in Foreclosure, Homestead Designation Notice, What Happens After The Foreclosure Sale, Foreclosure: Advice to Tenants Notice for the purpose of serving said notice upon all persons in possession thereof; that on said date, and for some time prior thereto, **Vicki Yang and Bee Vang,** and none other was in possession of said of land; and that on said day he/she served said Notice of Mortgage Foreclosure Sale, Help For Home Owners in Foreclosure, Homestead Designation Notice, What Happens After The Foreclosure Sale, Foreclosure: Advice to Tenants Notice on **Vicki Yang and Bee Vang,** by handing to and leaving with **Vicki Yang,** a person suitable age and discretion.

Matt Bostrom, Sheriff of Ramsey County

By: _____

Deputy **Denise Knafla #586**

Subscribed and Sworn to before me

This **3rd** day of **January, 2012**

_____
Notary Public

MICHELLE K. YANG
Notary Public-Minnesota
My Commission Expires Jan 31, 2014

NOTICE OF MORTGAGE FORECLOSURE SALE

**THE RIGHT TO VERIFICATION OF THE DEBT AND IDENTITY OF THE ORIGINAL CREDITOR WITHIN THE TIME PROVIDED BY LAW IS NOT AFFECTED BY THIS ACTION.**

NOTICE IS HEREBY GIVEN, that default has occurred in conditions of the following described mortgage:
DATE OF MORTGAGE:   September 12, 2003
MORTGAGOR: David B. Liset, a single man.
MORTGAGEE:   Mortgage Electronic Registration Systems, Inc.
DATE AND PLACE OF RECORDING:  Recorded October 1, 2003, Ramsey County Recorder, Document No. 3681250.
ASSIGNMENTS OF MORTGAGE: Assigned to: LPP Mortgage Ltd.
TRANSACTION AGENT:   Mortgage Electronic Registration Systems, Inc.
TRANSACTION AGENT'S MORTGAGE IDENTIFICATION NUMBER ON MORTGAGE: ███████████████████
LENDER OR BROKER AND MORTGAGE ORIGINATOR STATED ON MORTGAGE: Great Northern Financial Group, Inc.
RESIDENTIAL MORTGAGE SERVICER:  Dovenmuehle Mortgage, Inc.
MORTGAGED PROPERTY ADDRESS:  730 Sherburne Avenue, Saint Paul, MN 55104
TAX PARCEL I.D. #:  35-29-23-140194
LEGAL DESCRIPTION OF PROPERTY:
Lot 13, Block 2, Syndicate No. 1 Addition.
COUNTY IN WHICH PROPERTY IS LOCATED:   Ramsey
ORIGINAL PRINCIPAL AMOUNT OF MORTGAGE:  $133,500.00
AMOUNT DUE AND CLAIMED TO BE DUE AS OF DATE OF NOTICE, INCLUDING TAXES, IF ANY, PAID BY MORTGAGEE:  $49,792.49
That prior to the commencement of this mortgage foreclosure proceeding Mortgagee/Assignee of Mortgagee complied with all notice requirements as required by statute; That no action or proceeding has been instituted at law or otherwise to recover the debt secured by said mortgage, or any part thereof;
PURSUANT to the power of sale contained in said mortgage, the above described property will be sold by the Sheriff of said county as follows:
DATE AND TIME OF SALE: February 7, 2012 at 10:00 AM
PLACE OF SALE: Sheriff's Office, Lowry Building / City Hall Annex, 25 West 4th Street, Suite 150, St. Paul, MN
to pay the debt then secured by said Mortgage, and taxes, if any, on said premises, and the costs and disbursements, including attorneys' fees allowed by law subject to redemption within twelve (12) months from the date of said sale by the mortgagor(s), their personal representatives or assigns unless reduced to Five (5) weeks under MN Stat. §580.07.
TIME AND DATE TO VACATE PROPERTY: If the real estate is an owner-occupied, single-family dwelling, unless otherwise provided

by law, the date on or before which the mortgagor(s) must vacate the property if the mortgage is not reinstated under section 580.30 or the property is not redeemed under section 580.23 is 11:59 p.m. on _February 7, 2013_, unless the redemption period is reduced to 5 weeks under MN Stat. Secs. 580.07 or 582.032.

MORTGAGOR(S) RELEASED FROM FINANCIAL OBLIGATION ON MORTGAGE:None
"THE TIME ALLOWED BY LAW FOR REDEMPTION BY THE MORTGAGOR, THE MORTGAGOR'S PERSONAL REPRESENTATIVES OR ASSIGNS, MAY BE REDUCED TO FIVE WEEKS IF A JUDICIAL ORDER IS ENTERED UNDER MINNESOTA STATUTES, SECTION 582.032, DETERMINING, AMONG OTHER THINGS, THAT THE MORTGAGED PREMISES ARE IMPROVED WITH A RESIDENTIAL DWELLING OF LESS THAN FIVE UNITS, ARE NOT PROPERTY USED IN AGRICULTURAL PRODUCTION, AND ARE ABANDONED."

Dated:  December 13, 2011.

LPP Mortgage Ltd.
Mortgagee/Assignee of Mortgagee

USSET, WEINGARDEN AND LIEBO, P.L.L.P.
Attorneys for Mortgagee/Assignee of Mortgagee
4500 Park Glen Road #300
Minneapolis, MN 55416
(952) 925-6888

THIS IS A COMMUNICATION FROM A DEBT COLLECTOR.

# Help For Homeowners in Foreclosure Notice

**The attorney preparing this foreclosure is:**
**Usset, Weingarden & Liebo, PLLP**
**4500 Park Glen Rd., # 300, Minneapolis, MN  55416**
**Phone: 952-925-6888**

David Liset
730 Sherburne Avenue
Saint Paul, MN 55104

**It is being prepared for:**
**Dovenmuehle Mortgage, Inc.**
**1 (800) 669 0340**

AS OF November 11, 2011, this lender says that you owe $5,343.43 to bring your mortgage up to date (or "reinstate" your mortgage).  Because of interest, late charges, attorneys' fees, foreclosure costs and other charges that may vary from day to day, the amount necessary to bring your mortgage current on the day you pay may be greater.  You must pay this amount, plus interest and other costs, to keep your house from going through a sheriff's sale.  If you wish to reinstate your mortgage prior to the date of the Sheriff's Sale or pay off your mortgage or redeem prior to the expiration of the redemption period, please call our office at 952-491-7770  for updated figures good through the date on which you inform us you intend to remit your reinstatement, pay off or redemption payment.  The sheriff's sale is scheduled for February 7, 2012 at 10:00 am at Sheriff's Office, Lowry Building / City Hall Annex, 25 West 4th Street, Suite 150, St. Paul, MN. Mortgage foreclosure is a complex process. People may contact you with advice and offers to help "save" your home.

**Remember:** It is important that you learn as much as you can about foreclosure and your situation. Find out about all your options before you make any agreements with anyone about the foreclosure of your home.

**Getting Help**

As soon as possible, you should contact your lender at the above number to talk about things you might be able to do to prevent foreclosure. You should also consider contacting the foreclosure prevention counselor in your area. A foreclosure prevention counselor can answer your questions, offer free advice, and help you create a plan which makes sense for your situation. Contact the Minnesota Home Ownership Center at 651-659-9336 or 866-462-6466 or www.hocmn.org or contact the United States Department of Housing and Urban Development at 1-800-569-4287 or www.hud.gov to get the phone number and location of the nearest certified counseling organization. Call today. The longer you wait, the fewer options you may have for a desirable result.

THIS IS A COMMUNICATION FROM A DEBT COLLECTOR.

## HOMESTEAD DESIGNATION NOTICE

"IF PART OF THE PROPERTY TO BE SOLD CONTAINS YOUR HOUSE, YOU MAY DESIGNATE AN AREA AS A HOMESTEAD TO BE SOLD AND REDEEMED SEPARATELY.

YOU MAY DESIGNATE THE HOUSE YOU OCCUPY AND ANY AMOUNT OF THE PROPERTY AS A HOMESTEAD.  THE DESIGNATED HOMESTEAD PROPERTY MUST CONFORM TO THE LOCAL ZONING ORDINANCES AND BE COMPACT SO THAT IT DOES NOT UNREASONABLY REDUCE THE VALUE OF THE REMAINING PROPERTY.

YOU MUST PROVIDE THE PERSON FORECLOSING ON THE PROPERTY, THE SHERIFF, AND THE COUNTY RECORDER WITH A COPY OF THE LEGAL DESCRIPTION OF THE HOMESTEAD YOU HAVE DESIGNATED BY TEN BUSINESS DAYS BEFORE THE DATE THE PROPERTY IS TO BE SOLD."

## THIS IS A COMMUNICATION FROM A DEBT COLLECTOR.

# Foreclosure: Advice to Tenants Notice

You are renting in a property that is in foreclosure. Minnesota law requires that we send you this notice about the foreclosure process. Please read it carefully.

The mortgage foreclosure does not change the terms of your lease. You and your landlord must continue to follow the terms of your lease, including the rights and responsibilities of you and your landlord. You must keep paying rent unless you have a legal reason to withhold it. Your landlord must keep the property repaired. Utilities must be paid under the terms of your lease or under state law.

Moving out of the property early might be a violation of your lease. The date of the sheriff's foreclosure sale is in the attached foreclosure notice. In most cases you do not need to move from the property before the sheriff's foreclosure sale. Read your lease to see if it says anything about foreclosure and about the rights you may have if the property is in foreclosure. If you have a month-to-month lease, the foreclosure notice does not change the rules for ending your lease. You and your landlord must still give legal notice to end your lease.

In most cases, your landlord has six months after the date of the sheriff's foreclosure sale to pay off the mortgage. This is called the "redemption period." Read the attached foreclosure notice to determine the length of the redemption period. You cannot be asked to move during the redemption period except for lease violations or if your lease expires during the redemption period. If your landlord stops the foreclosure, you may not have to move from the property. If your landlord does not stop the foreclosure, there will be a new owner of the property at the end of the redemption period.

The new owner may have the legal right to ask you to move even if your lease is not over. But, the new owner must still give you a written notice stating that the new owner wants you to move.

Do not wait to get information about foreclosure. Mortgage foreclosure is a complicated process. It is important you learn about your rights as a renter when there is a mortgage foreclosure. You may have fewer options if you wait too long. There are government agencies and nonprofit organizations that you may contact for helpful information about the foreclosure process. For the name and telephone number of an organization near you, please call the legal aid office or bar association office in your county. You also can find information on tenant rights at HOME Line at (866) 866-3546 and Law Help Minnesota at http://www.LawHelpMN.org. The state of Minnesota does not guarantee the advice of these agencies and organizations.

THIS IS A COMMUNICATION FROM A DEBT COLLECTOR

# What Happens After the Foreclosure Sale

After the sheriff's sale, you have the right to "redeem." Redeem means that you pay the amount bid for your house at the sheriff's sale, plus interest and costs, to keep your house. You can keep living in your home for a period of time after the foreclosure sale. This is called a "redemption period." The redemption period is <u>12 months</u> after the sheriff's sale, unless reduced to 5-weeks for abandoned properties under Minn. Stat. Sec. 582.032, or 5-weeks for mortgagor postponements under Minn. Stat. Sec. 580.07 Subd. 2, if applicable.

At the end of the redemption period, if you do not redeem or sell, you will have to leave your home. If you do not leave, the person or company that bid on your home at the sheriff's sale has the right to file an eviction against you in court.

## Be Careful of Foreclosure Scams

Be careful! After the foreclosure sale, people may approach you to buy your house or ask you to transfer your house to them for little or no money. Before you give up the rights to your house or sign any documents (including a deed), be sure you know how much the house sold for at the sheriff's sale and decide if you can save the house by paying the amount of the bid, plus interest and costs.

## How to Find Out How Much Your House Sold For at the Foreclosure Sale

The amount you need to pay to redeem your house may be less than the amount you owed on the mortgage before the sale. You can learn what this amount is (and who the winning bidder at the sale was) by attending the sheriff's sale or by contacting the sheriff's office after the sale.

## You Can Also Sell Your House

During the redemption period, if you sell your home, you must sell it for enough to pay off the winning bidder from the sheriff's sale and pay interest, fees, and other claims against the property. If there is any money left from the sale of the house after all these debts are paid, you can keep the money. You can also enter into a "short sale." A short sale is an

agreement in which the lender agrees to accept less than the full amount you owe on the mortgage.

## Get More Information and Advice

For more information and advice, contact an attorney or a mortgage foreclosure prevention counselor. You can find a mortgage foreclosure prevention counselor by contacting the Minnesota Home Ownership Center at 651-659-9336 or 866-462-6466 or www.hocmn.org or contact the United States Department of Housing and Urban Development at 1-800 569-4287 or www.hud.gov/ to get the phone number and location of the nearest certified counseling organization.

**THIS IS A COMMUNICATION FROM A DEBT COLLECTOR**

STATE OF MINNESOTA   )
                     )ss
COUNTY OF HENNEPIN   )

    Brian H. Liebo, being first duly sworn, on oath says that to the best of my knowledge and information relating to the military service status of David B. Liset, who was the owner of the mortgaged premises described in the foregoing Sheriff's Mortgage foreclosure sale thereof; that said David B. Liset, was not in the military or naval service of the United States at the time of said sale, or during the three months preceding such sale, as appears from the following facts,


information provided by mortgagee or servicer of mortgagee and/or information received or obtained by our office during foreclosure.


                                      Brian H. Liebo


Subscribed and Sworn to before me on **FEB 0 2 2012**.


Notary Public

JONATHAN ERICKSON
NOTARY PUBLIC - MINNESOTA
My Commission Expires Jan. 31, 2015

AFFIDAVIT OF COSTS AND DISBURSEMENTS

STATE OF MINNESOTA   )
                     )ss
COUNTY OF HENNEPIN   )

Brian H. Liebo, being duly sworn, on oath says; that he is one of the attorneys foreclosing the mortgage described in the printed notice of mortgage foreclosure sale hereto attached; that the following is a detailed bill of the costs and disbursements of said foreclosure, and that the same have been or will be absolutely and unconditionally paid or incurred therein, to-wit:

| | |
|---|---|
| Attorneys' fees for foreclosing said Mortgage: | $ 700.00 |
| Printer's fee for publishing Notice of Sale: | 611.74 |
| Recording Costs: | 127.00 |
| Fees for serving Notice of Sale on occupants: | 64.80 |
| Abstract Fees: | 200.00 |
| Sheriff's fee/sale costs: | 80.00 |
| Total Costs and Disbursements: | $1,783.54 |

THE FORECLOSING PARTY HAS COMPLIED WITH MN STAT. SECS. 580.021, 580.04, 580.041, 580.042, 580.07, 582.039, 582.041,and/or 582.042 where required by law.

Brian H. Liebo

Subscribed and sworn to before
me on _____ FEB 0 2 2012 .

Notary Public

JONATHAN ERICKSON
NOTARY PUBLIC - MINNESOTA
My Commission Expires Jan. 31, 2015

13

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In Re:

David Baard Hastings
fka David Baard Liset

<u>MEMORANDUM OF LAW</u>

Debtor

Chapter 7, Case No. 15-50779

---

## FACTS AND BACKGROUND

The facts are detailed in LPP Mortgage Ltd. Motion for Relief From Stay and Declaration

of Kevin T. Dobie and are incorporated herein.   On February 5, 2016, the debtor filed this

Chapter 7 bankruptcy case.

## ARGUMENT

**LPP Mortgage Ltd. Is Entitled to Relief From Stay Pursuant to Section 362(d)(1) and
362(d)(2), for an Order Vacating the Sheriff's Certificate of Sale to Correct the Property
Records.**

Under Section 362(d)(1) of the Bankruptcy Code, relief from the automatic stay shall be

granted upon request of a creditor "for cause, including the lack of adequate protection of an

interest in property of such creditor."

As the Eighth Circuit Bankruptcy Appellate Panel stated in *In re Martens*,

The statutory grounds [under 11 U.S.C. §§ 362(d)(1) and (2)] for granting relief from the
automatic stay are in the disjunctive. The bankruptcy court must, therefore, grant relief if
the movant either proves cause, or proves that there is no equity in the property and that it
is not necessary for a successful reorganization. Cause has been defined to mean "any
reason whereby a creditor is receiving less than his bargain from a debtor and is without
remedy because of the bankruptcy proceeding."

-2-

*In re Martens*, 331 B.R. 395, 398 (8th Cir. B.A.P. 2005)(citations omitted).

> "Cause" as used in § 362(d)(1) has no clear and limited definition and, therefore, is determined on a case by case basis… "Cause" is an intentionally broad and flexible concept that permits the Bankruptcy Court, as a court of equity, to respond to inherently fact-sensitive situations.

*In re Texas State Optical,* Inc., 188 B.R. 552, 556 (Bankr. E.D. Tex. 1995)(citations omitted). The standard for "cause" under § 362(d)(1) is broad, and may extend beyond one enumerated ground of lack of "adequate protection" as defined by 11 U.S.C. § 361. *In re Lilyerd*, 49 B.R. 109, 116 (Bankr. D. Minn. 1985).

There is cause for relief from stay to vacate the sheriff's sale. Pursuant to Minnesota Statutes section 580.30, the mortgagor may reinstate the loan before the sheriff's sale by paying the delinquent amounts due. Upon payment by the debtor or his agent, the sheriff should have canceled the sale. Accordingly, cause exists to issue an order correcting the property records, setting aside the sheriff's sale ab initio, and for relief from the automatic stay.

Under Section 362(d)(2) relief shall be granted "if the debtor has no equity in the property and the property is not necessary for an effective reorganization."

At present, the property records provide that LPP Mortgage Ltd. is the fee owner of the subject real property. Thus, the debtor has no equity, and because this is a chapter 7 case and the debtor does not live in the property, the property is not necessary for an effective reorganization. LPP Mortgage Ltd., the mortgagor, and the Trustee, request that the sale be set aside, ab initio. LPP Mortgage Ltd. is seeking relief from stay to record an order vacating the sheriff's sale ab initio.

**CONCLUSION**

Movant is entitled to relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) for

cause, where its interest in the property is not adequately protected, and pursuant to Section

362(d)(2) because the debtor has no equity and it is not necessary to an effective reorganization.

Movant respectfully requests an order of this Court modifying the automatic stay and setting

aside the Sheriff's Certificate of Sale ab initio.


Dated:  May 5, 2016


       USSET, WEINGARDEN & LIEBO, P.L.L.P.

       By:<u>/E/ Kevin T. Dobie</u>
         Kevin T. Dobie #388322
         Attorney for Movant
         4500 Park Glen Road, #300
         Minneapolis, MN 55416
         (952) 925-6888
         (952) 925-5879 (facsimile)
         kevin@uwllaw.com

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In Re:

                  Chapter 7
                  Case No. 15-50779

David Baard Hastings
fka David Baard Liset,

                  <u>ORDER</u>

     Debtor.

---

**ORDER GRANTING RELIEF FROM STAY**

   This case came before the court on the motion of LPP Mortgage, Ltd. for relief from the automatic stay and the stipulation of LPP Mortgage Ltd., the Debtor David Baard Hastings formerly known as David Baard Liset, and the Chapter 7 Trustee,

      **IT IS ORDERED**:

1.  The motion for relief from stay is granted as follows.

2.  The automatic stay imposed by 11 U.S.C. § 362(a) is terminated such that the movant may record a certified copy of this order in the office of the Ramsey County Recorder, State of Minnesota.

3.  The Mortgage filed as Ramsey County Recorder Document No. 3681250 and the Assignment of Mortgage filed as Ramsey County Recorder Document No. 4279178 are revived in full force and effect to their original priority, together with all of the terms and conditions contained therein including, but not limited to, the power of sale contained therein, as provided by the Mortgage, subject to prior encumbrances of record if any concerning the real property situated in Ramsey County, Minnesota, and legally described as:

   Lot 13, Block 2, Syndicate No. 1 Addition.

4.  The sheriff's sale of February 7, 2012, and the associated Sheriff's Certificate of Sale recorded in the office of the Ramsey County Recorder on February 8, 2012, as Document No. 4319472 are void ab initio.

5.  Notwithstanding Fed. R. Bankr. P. 4001(a)(3), this order is effective immediately.

Dated: _____

                _____
                United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In Re:

David Baard Hastings
fka David Baard Liset

UNSWORN DECLARATION
FOR PROOF OF SERVICE

Debtor

Chapter 7, Case No. 15-50779

I, Jennifer A. Peterson, employed on this date by USSET, WEINGARDEN & LIEBO PLLP, attorneys licensed to practice law in this court, with office address of Suite 300, 4500 Park Glen Road, Minneapolis, Minnesota 55416, declares that on May 6, 2016, I served the annexed Notice of Hearing and Motion for Relief from Automatic Stay upon each of the entities named below by mailing to them a copy thereof by enclosing same in an envelope with first class mail postage prepaid and depositing same in the post office at Minneapolis, Minnesota, addressed to each of them as follows:

David Baard Hastings
1812 Highway 23
Mora, MN 55051

David Baard Hastings
730 Sherburne Ave
Saint Paul, MN 55104

Occupant(s)
730 Sherburne Ave
Saint Paul, MN 55104

Ying Xiong
c/o Timothy R. Maher, Esq.
Guzior Ambrecht Maher
310 Fourth Avenue South, Suite 950
Minneapolis, MN 55415

and delivered by email notification under CM/ECF on the day e-filed with the court to each of them as follows:

Office of the United States Trustee

Erik Ahlgren, Chapter 7 Trustee

Nicole L. Anderson, Esq.

/E/Jennifer A. Peterson
Jennifer A. Peterson